UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMCA GROUP, LTD., | No. C-06-7067 MMC (EMC) |
| Plaintiff, | |
| v. | **ORDER RE JOINT LETTER OF FEBRUARY 26, 2009** |
| HEWLETT-PACKARD COMPANY, *et al.*, | |
| Defendants. | **(Docket No. 483)** |

The parties have presented a discovery dispute to the undersigned via a joint letter dated February 26, 2009. Having considered the joint letter and its accompanying submissions, as well as all other evidence of record, the Court hereby rules as follows.

**I.   DISCUSSION**

At issue is modification of the protective order in the instant case. Both HP and PICA ask that the protective order be modified so that certain in-house attorneys are permitted access to materials designated Attorney's Eyes Only ("AEO") by MMCA. In resolving this issue, this Court is guided by the Ninth Circuit's decision *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992). There, the Ninth Circuit stated that, in determining whether the plaintiff's in-house counsel should be permitted to view the defendant's trade secrets, it would balance the risk to the defendant of inadvertent disclosure of its trade secrets to competitors against the risk to the plaintiff that protection of the trade secrets impaired prosecution of its claims. *See id.* at 1470. According to the court, a crucial inquiry was whether in-house counsel was involved in "competitive decisionmaking" – *i.e.*, giving advice on or participating in decisions on product design, pricing, and

the like made in light of similar or corresponding information about a competitor. *See id.* (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)).

A. <u>HP</u>

HP asks that the following in-house attorneys be permitted access to MMCA's AEO materials: Paul Roeder, Robert Case, and John Schultz.

MMCA is willing to provide such access but it specifically states that its willingness to do so is "contingent upon PICA's 'in house' counsel, Luis Alcalde, not having similar access to MMCA's AEO documents." Joint Letter at 6.

Because MMCA is willing to make only a contingent agreement, the Court must independently evaluate (1) the risk that MMCA's highly confidential information might be disclosed to competitors if the information were accessible to in-house counsel as well as (2) the risk that HP's defense might be impaired without the information being accessible to such counsel.

As to the risk of disclosure, it is, in all likelihood, small. Although, in this very litigation, MMCA seems to be accusing HP of, *inter alia*, giving MMCA's trade secrets to a competitor (*i.e.*, PICA), the only attorneys who would be given access to AEO materials would be litigation attorneys with no involvement in HP's anticounterfeiting program.

As to the risk that HP's defense might be impaired, there is, from a reasonable standpoint, some such risk, although the scope of the risk is not clear as the only evidence of record is a statement that "HP would like to share [the AEO] material with its in-house counsel to allow informed strategy decisions." Joint Letter at 1.

Balancing the above, the Court concludes that modification of the protective order is appropriate. Although the risk to HP is not well defined, the Court is sufficiently satisfied that the risk of disclosure of MMCA's trade secrets to competitors is minimal, particularly since the HP attorneys are willing to sign acknowledgment attached to the protective order. Accordingly, the Court orders that the protective order be modified so that the following HP attorneys may be permitted access to MMCA's AEO materials: Mr. Roeder, Mr. Case, and Mr. Schultz. HP and MMCA are to submit a proposed modified protective order allowing these attorneys access to AEO materials.

B.     PICA

It is undisputed that PICA, unlike HP, is a direct competitor of MMCA. Notwithstanding such, PICA asks that Mr. Alcalde, its president and general counsel, be permitted access to MMCA's AEO materials.

The Court finds that there is a not insignificant risk of disclosure should the AEO materials be accessible by Mr. Alcalde. For example, one of Mr. Alcalde's responsibilities is to edit client proposals. *See* Alcalde Decl. ¶ 12. Even is his editing is simply for purposes of legal review, it would be difficult for him to lock up MMCA's highly confidential information in his mind and not have that information potentially inform his legal advice about PICA's client proposals. *See Brown Bag*, 960 F.2d at 1471 (considering whether counsel "could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents"); *Intel Corp. v. Via Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (explaining that counsel's knowledge of opposing party's products, licensing agreements, and marketing information "would be directly relevant to her evaluation of licensing agreements of related products of Intel"; accordingly, counsel would be put into "the untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information").

Moreover, even though Mr. Alcalde in his declaration disavows any present involvement in competitive decisionmaking, *see* Alcalde Decl. ¶ 13, the Court still has concerns. Mr. Alcalde is not simply general counsel of PICA but also its president. PICA's own documents -- *e.g.*, its website and press release -- describe the duties of the president in expansive terms. Even if, at present, Mr. Alcalde's "*primary* duties are legal and the vast *majority* of [his] time is spent doing legal work," Alcalde Decl. ¶ 10 (emphasis added), he still has nonlegal responsibilities, and his responsibilities may change in the future. Notably, Mr. Alcalde stated at the hearing that his duties are whatever PICA's CEO says they are. Thus, business-oriented duties which might relate to competitive decisionmaking are possible.

As for the risk of an impaired defense should the Court deny access to Mr. Alcalde, there is plausibly some risk but any such risk is largely ill defined. *See* Alcalde Decl. ¶ 14 (claiming that "it is imperative that I have access to Attorneys Eyes Only (AEO) documents to be able to work with

3

Wendel Rosen in defending PICA in all phases of this litigation"). In the joint letter, PICA notes that nondisclosure will prevent Mr. Alcalde from conducting depositions, but PICA has not demonstrated that only Mr. Alcalde is capable of conducting the depositions or that having a lawyer other than Mr. Alcalde conduct the depositions would be unduly burdensome.

Accordingly, balancing the respective risks associated with disclosure and nondisclosure of AEO materials to Mr. Alcalde, the Court concludes that the risk to MMCA is greater than the risk to PICA. The Court therefore shall not order that the protective order be modified so as to permit Mr. Alcalde access to MMCA's AEO materials.

The Court, however, gives due recognition to PICA's contention that there has been overdesignation of AEO materials, both by MMCA and HP. PICA has special urgency regarding overdesignation because depositions are scheduled to begin on or about April 6, 2009. To move this discovery dispute along, the Court shall require PICA to identify documents that it believes have been improperly designated (whether by MMCA or HP) by March 16, 2009.[1] The parties shall thereafter meet and confer to determine whether they can reach an agreement as to whether the AEO designations were proper *or* whether Mr. Alcalde at least may be permitted to view the AEO materials. If the parties are unable to resolve all of their differences, then they shall file a joint letter with the Court by March 25, 2009. The actual documents in dispute should also be provided to the Court. The parties are forewarned that the Court does not expect there to be a large number of disputed documents; any party that takes an unreasonable position on designation risks being subjected to sanctions.

///
///
///
///
///

---

[1] This timeline shall not bar PICA from subsequently challenging additional documents on the basis of improper designation. The Court's order here is intended to facilitate the use of documents at the upcoming depositions in April.

4

## II. CONCLUSION

For the foregoing reasons, HP's request for modification of the protective order is granted but PICA's denied.

This order disposes of Docket No. 483.

IT IS SO ORDERED.

Dated: March 5, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge