UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMCA GROUP, LTD., | No. C-06-7067 MMC (EMC) |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER; AND DENYING DEFENDANT'S MOTION TO MODIFY PROTECTIVE ORDER** |
| HEWLETT-PACKARD COMPANY, *et al.*, | |
| Defendants. | |
| | **(Docket No. 532, 539)** |

Plaintiff MMCA Group Ltd. has moved for a protective order to bar Defendant PICA Corporation's in-house counsel, Kate E. Manka, from viewing materials designated attorney's eyes only ("AEO") by MMCA. PICA in turn has moved for modification of the protective order so that Ms. Manka will be permitted to view the AEO materials. PICA also asks that the protective order be modified so that only certain categories of information may be designated AEO and so that a party may be sanctioned for improperly designating information AEO. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **GRANTS** MMCA's motion and **DENIES** PICA's motion.

**I.     DISCUSSION**

A.     Ms. Manka

As indicated above, the main dispute is whether Ms. Manka, PICA's in-house counsel, should be permitted to view MMCA's AEO materials. As the Court stated in a prior order, resolution of this issue is guided by the Ninth Circuit's decision *Brown Bag Software v. Symantec*

*Corp.*, 960 F.2d 1465 (9th Cir. 1992). *See* Docket No. 486 (order, filed on 3/5/2009). In essence, in accordance *Brown Bag*, the Court must balance the risk to MMCA if its AEO materials are disclosed against the risk to PICA if the AEO materials are not disclosed.

The risk to MMCA of disclosure boils down to whether Ms. Manka is involved in "competitive decisionmaking." *See Brown Bag*, 960 F.2d at 1470. Ms. Manka has only recently been hired by PICA, no formal employment agreement has been signed as of yet, and there is no formal description of her job duties. *See* Docket No. 552 (Frucht Decl., Ex. 5) (e-mail, dated 6/8/09, from Mr. Melick to, *inter alia*, Mr. Frucht) (stating that PICA has been "waiting to see if we can resolve the AEO issues with [MMCA] before finalizing any agreement with [Ms. Manka]"). Thus, determining whether or not she is or is likely to become involved in competitive decisionmaking is complicated by the ill-defined scope of her duties as General Counsel of PICA.

It does appear, however, that Ms. Manka will draft and/or give advice on contracts for PICA, including contracts between PICA and its clients and contracts between PICA and its employees. PICA argues that, although Ms. Manka will have participation with respect to these contracts, she would not give input on any competitive matters such as pricing, hiring, and so forth if she is allowed to view MMCA's AEO information. But Ms. Manka would still be allowed to give "input on PICA contracts such as whether a particular jury trial waiver or non-compete clause would be enforceable in a given jurisdiction" because these matters have nothing to do with competitive decisionmaking. Docket No. 548 (Manka Decl. ¶ 4). The problem for PICA is that even input in such areas implicates competitive decisionmaking as defined by the apparent scope of the claims at issue. For example, if Ms. Manka was privy to the terms of MMCA's employment contracts with its agents and learned that MMCA's contracts contained a strict noncompete clause, then it would be difficult for her to lock up that information in her mind and not have that information potentially inform her advice about whether to include a noncompete clause in PICA's employment contracts and, if so, what its terms should be. By omitting such a clause or narrowing its scope, PICA could gain a competitive advantage in bidding for contracts. While such a term may not be as sensitive for competitive purposes as *e.g.*, pricing, non-monetary terms can have material value and affect the

competitiveness of a bid.  In addition, MMCA points out there are other AEO documents such as invoices which would reveal MMCA's customers and investigative techniques.

Ms. Manka will, as a regular part of her corporate duties, advise and participate in at least some aspects of competitive decisionmaking.  The instant case thus is distinguishable from *Matsushita Electric Industrial Co., Ltd. v. United States*, 929 F.2d 1577 (Fed. Cir. 1991).  There corporate counsel represented he was not involved in the matters constituted competitive decisionmaking in that case -- pricing and technical design of products.  *Id.* at 1579.  He was involved primarily with employee benefit matters.  He did not attend meetings involving competing products or marketing strategies.  *Id.* at 1579-80.  While he had regular contact with executives who had such responsibilities, his assigned functions were well isolated from competitive decisionmaking.  Likewise, in *Glaxo, Inc. v. Genpharm Pharmaceuticals, Inc.*, 796 F. Supp. 872 (E.D.N.C. 1992) and *Fluke Corp. v. Fine Instruments Corp.*, 1994 U.S. LEXIS 16286 (W.D. Wa. 1994), corporate counsels' functions were isolated from the competitive decisions at issue.

Ms. Manka cannot claim her functions at PICA are so isolated.  Both her title and described duties, while somewhat ill-defined, imply her assigned functions involve some competitive decisionmaking unlike *Matsushita*, *Glaxo*, and *Fluke*.  The risk of inadvertent disclosure in this case is compounded by the fact that she works for a small company and is apparently the only in-house attorney tasked with providing legal advice to PICA.  The only other attorney in the United States offices of PICA is PICA's CFO.

As to the risk to PICA if there is no disclosure, MMCA argues that there is little to no risk because PICA has outside counsel who can view the AEO materials even if Ms. Manka cannot. While the fact that PICA has outside counsel does weigh in MMCA's favor, it should also be noted that MMCA appears to have overdesignated (to what extent is not clear) its AEO materials.  The broad designation places the bulk of the litigation on the shoulders of outside counsel, and it can reasonably be inferred that this could hamper PICA's defense to at least some extent since certain topics may not be discussed by outside counsel with the client directly.  The overdesignation also creates additional cost for PICA who must rely on outside counsel to conduct the bulk of the

1  litigation. In short, contrary to what MMCA argues, some risk and burden to PICA must be
2  acknowledged if there is to be no disclosure of AEO materials to Ms. Manka.
3      Nevertheless, balancing the risks associated with disclosure and nondisclosure, the Court
4  concludes that disclosure of AEO materials to Ms. Manka is not appropriate. The Court notes,
5  however, that the Court will closely scrutinize any claim of overdesignation by MMCA since such
6  designation will come at cost to PICA in view of this order.

7  B.    <u>Overdesignation of AEO Materials</u>

8      Based on MMCA's overdesignation of AEO materials, PICA asks that the protective order
9  be modified such that (1) only certain categories of information may be designated AEO and (2) a
10 party may be sanctioned if there has been an overdesignation of AEO materials. The Court denies
11 the request for relief. Re-designation would be an unnecessary waste of resources. It would require
12 all parties including HP to review and revise their document productions. Moreover, there is already
13 a procedure by which a party may challenge a designation made by another party, and this Court as
14 well as the presiding judge has the authority to sanction if there has been an abuse of the discovery
15 process or if a party takes a position that is not substantially justified. The Court has already ordered
16 PICA and MMCA to meet and confer on the question of overdesignation.

## II. CONCLUSION

18     For the foregoing reasons, the Court grants MMCA's motion for a protective order and
19 denies PICA's motion to modify the protective order.
20     This order disposes of Docket Nos. 532 and 539.

22     IT IS SO ORDERED.

24 Dated: June 26, 2009

EDWARD M. CHEN
United States Magistrate Judge

4