IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMCA GROUP, LTD, <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY, et al., <br><br> Defendants / | No. C-06-7067 MMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART HEWLETT-PACKARD COMPANY'S MOTION FOR SUMMARY JUDGMENT; DENYING PICA CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are (1) defendant Hewlett-Packard Company's ("HP") Motion for Partial Summary Judgment or, in the Alternative, for Judgment on the Pleadings, filed October 31, 2008, and (2) defendant PICA Corporation's ("PICA") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, filed December 24, 2008. Both motions have been fully briefed, including supplemental briefing by all parties.[1] Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[2]

//

---

[1] By order dated November 18, 2009, the previously scheduled hearing on the matters was vacated.

[2] With respect to the various evidentiary objections raised by the parties, to the extent the Court has relied herein on any evidence to which an objection has been made, the objection is overruled, and to the extent the Court has not relied on such evidence, the Court does not reach the objection. Additionally, HP's unopposed Request for Judicial Notice, filed December 15, 2008, is hereby granted and PICA's Motion to Strike Declaration of Robert Creswell, filed November 6, 2009, is hereby denied.

### A. HP's Motion

#### 1. First Claim for Relief (Interference with Prospective Economic Advantage)

In response to HP's motion, plaintiff MMCA Group, Ltd. ("MMCA") concedes it "cannot state an actionable claim for intentional interference with prospective economic advantage against HP." (See Opp'n at 24:13-16.)

Accordingly, HP is entitled to summary judgment on MMCA's First Claim for Relief.

#### 2. Second Claim for Relief (Interference with Contractual Relations)

As discussed below, the Court finds persuasive, HP's argument that it is entitled to summary judgment on MMCA's claim for interference with contractual relations.

First, to the extent MMCA's claim is based on an allegation that HP interfered with the HP Services Agreement, HP, as a party to such contract, cannot be held liable for interference. See, e.g., Gilbert v. El Paso Co., 490 A.2d 1050, 1058 (Del. Ch. 1984) (holding party to contract could not be held liable for tortious interference with said contract).[3]

Second, to the extent MMCA's claim is based on an allegation that HP interfered with MMCA's contracts with MMCA's employees and contractors, such conduct is identical to the conduct that forms the basis of MMCA's Third Claim for Relief (Breach of Contract), to the extent such Third Claim for Relief is predicated on a breach of the "non-solicitation" clause contained in the HP Services Agreement (see Smart Decl. Ex. F § 17.14); consequently, such conduct cannot, without more, form the basis of a tort claim. See Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co., 556 F. Supp. 2d 367, 377 (D. Del. 2008) (noting "even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself"). Although "the same circumstances may give rise to both breach of contract and tort claims if the plaintiff asserts that the alleged contractual breach

---

[3] The HP Services Agreement contains a choice-of-law provision selecting Delaware law. (See Smart Decl. Ex. F § 17.6.) Further, throughout the briefing, both MMCA and HP rely on Delaware statutory and case law as support for their respective arguments, irrespective of whether the claim at issue is contractual in nature.

2

was accompanied by the breach of an independent duty imposed by law," id., MMCA has pointed to no such independent duty with respect to solicitation of personnel.

Further, to the extent MMCA contends HP's disclosure of names and contact information constitutes wrongful conduct beyond the breach of the contract itself, such alleged conduct is identical to the conduct that forms the basis of MMCA's Fourth Claim for Relief, by which MMCA alleges a claim for misappropriation of trade secrets. Under Delaware law, a statutory cause of action for misappropriation of trade secrets "displaces conflicting tort . . . law." See 6 Del. Code § 2007(a).[4] Consequently, where a misappropriation claim and another tort claim are based on the same facts, the other tort claim fails. See, e.g., Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755 F. Supp. 635, 636-37 (D. Del. 1991) (noting purpose of trade secrets statutory scheme is to "eliminate other tort causes of action founded on allegations of trade secret misappropriation"); Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1057 (Del.Super. 2001) (same).

Accordingly, HP is entitled to summary judgment on the Second Claim for Relief.

**3. Third Claim for Relief (Breach of Contract)**

To the extent MMCA's claim is based on an allegation that HP breached the HP Services Agreement by terminating MMCA's projects in the Latin America Region ("LAR") and in the Europe, Middle East, and Africa Region ("EMEA"), MMCA's claim is foreclosed by the language of the Agreement.[5] In particular, the HP Services Agreement expressly states: "HP may change or terminate a project or activity hereunder, or any portion thereof,

---

[4] Although MMCA's misappropriation claim is brought "under California law" (see Second Amended Complaint ("SAC") at 28:8 & ¶ 147), both MMCA and HP, as noted above, rely on Delaware law for the purpose of defining, as well as limiting the availability of, MMCA's cause of action for interference.

[5] HP states it is not moving for summary judgment on MMCA's breach of contract claim to the extent such claim is based on an allegation that HP breached the Services Agreement by refusing to pay certain invoices or by not paying them in timely fashion. (See Mot. at 2 n.2.) Accordingly, the Court makes no determination herein with respect to any such claim.

3

at any time." (See Smart Decl. Ex. F at § 5.4.)[6]

To the extent MMCA's claim is based on an allegation that HP breached the HP Services Agreement by soliciting three unidentified MMCA "associates," HP, as set forth below, likewise is entitled to summary judgment.

In particular, to the extent MMCA's breach of contract claim is based on a solicitation alleged to have been made in June 2002 and discovered by MMCA in February 2003 (see Second Amended Complaint ("SAC") ¶ 34), such claim is barred by the applicable statute of limitations, the SAC having been filed on November 14, 2006, more than three years after any such cause of action accrued. See 10 Del. Code § 8106 (providing three-year statute of limitations for contract claims). Further, to the extent MMCA's claim is based on such solicitation as well as on two other alleged incidents of solicitation (see SAC ¶ 78, 108), HP is entitled to summary judgment for the reason that MMCA cannot show it suffered any damage or loss by reason thereof. See VLIW Technology, LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. Supr. 2003) (holding to survive motion to dismiss claim for breach of contract, plaintiff must demonstrate "resultant damage"). MMCA admits one such associate "declined" to leave MMCA (see SAC ¶ 108) and MMCA neither argues nor offers any evidence to show that either of the other two associates acted on the solicitation or that MMCA otherwise suffered any loss by reason thereof.

To the extent MMCA's claim is based on HP's alleged participation in solicitations by other entities, HP has failed to show no triable issue exists as to the eight individuals identified by MMCA as having left MMCA in response to such solicitations, specifically, Gabriela Toranzo, Rocio Cvar, Tatiana Gomes, Renata Martinho, Mauro Chavez, Jacky Vandendriessche, Hoda Hafez and Mohammed Shaltout. (See Opp'n at 11-13; Reply at

---

[6] Although the HP Services Agreement also provides that such Agreement itself "may be terminated . . . [b]y either party without cause upon sixty (60) days prior written notice" (see Smart Decl. Ex. F at § 16.1(c)), the Agreement requires no such advance notice where the termination relates to "Statements of Work" and any "projects" undertaken thereunder (see id. §§ 5.1, 5.4).

5.) Further, HP has not shown MMCA's indirect solicitation claim is limited to a particular group of employees or contractors; consequently, HP has not shown such claim can proceed only to the extent it is based on the eight individuals identified above.

Lastly, to the extent HP contends the HP Services Agreement limits MMCA's potential damages (see Smart Decl. Ex. F § 11), HP, on the record presented, has failed to show its entitlement as a matter of law to the relief requested. In particular, HP fails to cite to any authority or evidence demonstrating the language of the provision on which HP relies can only be interpreted in the manner asserted by HP and irrespective of the particular breach claimed. Additionally, although MMCA has made a minimal showing that such provision is "unconscionable" or otherwise unenforceable, see Hampton v. Warren-Wolfe Associates, Inc., 2004 WL 838847 at *3 (Del.Super. 2004), "the issue of whether limitation provisions are enforceable" under Delaware law "are matters which generally should not be decided on . . . summary judgment." Id. (citing J.A. Jones Construction Co. v. City of Dover, 372 A.2d 540, 553 (Del.Super. 1997)).

Accordingly, HP is entitled to summary judgment on the Third Claim for Relief to extent such claim is based on termination of HP's services in the LAR and EMEA and on direct solicitation of MMCA personnel; in all other respects, HP is not entitled to summary judgment on the claim.

**4. Fourth Claim for Relief (Misappropriation of Trade Secrets)**

As discussed below, HP, contrary to its contentions, is not entitled to summary judgment on MMCA's claim for misappropriation of trade secrets.[7]

First, HP has failed to show that as a matter of law any of the trade secrets alleged by MMCA are not sufficiently defined to form the basis of a misappropriation claim. See, e.g., Savor, Inc. v. FMR Corp., 2004 WL 1965869 at *6 (Del.Super. 2004) (finding, on motion for summary judgment, trade secrets sufficiently defined where described as "a

---

[7] HP states it is not moving for summary judgment to the extent MMCA's misappropriation claim is based on an alleged misappropriation of pricing information. (See HP's Mot. at 2 n.2.) Accordingly, the Court makes no determination herein with respect to such claim.

5

1  unique combination of unified characteristics, components, applications, compilations [sic]
2  of business information, methods, techniques, processes, and operations of marketing,
3  monitoring, and administration of a college savings program") (alteration in original).

4  Second, HP has failed to show no triable issue exists with respect to the question of
5  whether MMCA's alleged trade secrets derive "independent economic value" (see 6 Del.
6  Code, tit. 6 § 2001(4)) from their secrecy. See Miles, Inc. v. Cookson Am., Inc., 1994 WL
7  676761 at *10 (Del. Ch. 1994) (noting, "[a]n alleged trade secret derives actual or potential
8  economic value if a competitor cannot produce a comparable product without a similar
9  expenditure of time and money"); (see, e.g., Byrne Decl. ¶¶ 6, 13-14; Cherry Decl. ¶ 6).

10  Similarly, HP has failed to show no triable issue exists with respect to the question of
11  whether the alleged trade secrets were "not [ ] of public knowledge or of a general
12  knowledge in the trade or business."  See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470,
13  475 (1974); Savor, 2004 WL 1965869 at *6 (holding "a unique combination of public
14  information and ideas can be worthy of trade secret protection" (collecting cases); (see,
15  e.g., Cherry Decl. ¶¶ 6, 10); see also Restatement (Third) of Unfair Competition § 39, cmt f
16  (1995) (noting "[t]rade secret protection can [ ] survive limited non-confidential disclosure if
17  the information does not become generally known or readily ascertainable by competitors[;]
18  recognizing information may "remain[ ] sufficiently secret for protection" where "publications
19  containing the information are unavailable or unlikely to come to the attention of others to
20  whom the information has value"); (see, e.g.,Cherry Supp. Decl. at 4:21-26, 5:3-4).

21  Nor, with one exception discussed below, has HP shown no triable issue exists with
22  respect to whether the alleged trade secrets were disclosed to HP without an obligation to
23  maintain their confidentiality or otherwise were not the subject of reasonable measures on
24  the part of MMCA to maintain their secrecy. See Kewanee Oil Co. v. Bicron Corp., 416
25  U.S. at 475 (holding "necessary element of secrecy is not lost . . . if the holder of the trade
26  secret reveals the trade secret to another in confidence and under an implied obligation not
27  to use or disclose it") (internal quotation and citation omitted); (see, e.g., Cherry Decl. ¶¶
28  39-41).  The one exception concerns MMCA's assertion, as a basis for its misappropriation

6

claim, that "information specific to each prior and ongoing investigation in which each operative was engaged" constitutes a trade secret. (See Smart Decl. Ex. A at 20:14-15.) To the extent such asserted trade secret is defined as encompassing any "Work Product delivered to HP in the form of written reports or documentation of the results of investigations," HP is entitled to summary judgment.  (See id. Ex. F § 9.1(a)(v)) (providing "HP Owns . . . all of the Work Product delivered to HP in the form of written reports or documentation of the results of investigations"); see also id. § 2.8 (defining "Work Product"); id. § 9.2(ii) (providing  "MMCA Owns . . . Trade secrets"; defining "Trade secrets" to include "means and methods used to provide investigative services and investigative functions").)  Because HP has not identified, however, any particular document as being excluded from trade secret protection by reason of such provision, the Court makes no determination herein as to whether MMCA is precluded from relying on any such evidence in support of its claim.

Lastly, HP has failed to show no triable issue exists with respect to the question of whether HP misappropriated the alleged trade secrets by the use or disclosure thereof. In particular, HP has neither submitted evidence sufficient to demonstrate a lack of such use or disclosure nor shown MMCA will be unable to offer such evidence at trial. (See Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1105-1106 (9th Cir. 2000) (holding moving party must "produce affirmative evidence negating an essential element" of nonmoving party's claim or "point to materials on file which demonstrate that a party will not be able to meet that burden") (internal quotation and citation omitted).

Accordingly, with the limited exception of "Work Product," HP is not entitled to summary judgment on the Fourth Claim for Relief.

**5. Fifth Claim for Relief (Breach of Implied Covenant of Good Faith and Fair Dealing**)

As set forth in HP's argument, HP is entitled to summary judgment on MMCA's claim that HP breached the implied covenant of good faith and fair dealing.  In particular, as HP points out, MMCA has failed to identify a cognizable "specific implied contractual

obligation" to be read into the HP Services Agreement. See Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 872 A.2d 611, 630 (Del.Ch. 2005) (holding "to state a claim for breach of an implied covenant of good faith and fair dealing, a plaintiff must identify a specific implied contractual obligation") (internal quotation and citation omitted). Rather, the "implied" terms on which MMCA relies are either no different than the express terms set forth in such Agreement or in conflict therewith. See Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc., 854 A.2d 121, 141 n.32 (Del.Ch. 2004) (holding "a party cannot assert a claim for breach of implied covenants [of good faith and fair dealing] that is based on exactly the same acts which are said to be in breach of express covenants") (internal quotation omitted) (alteration in original) (citing USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 439 (3rd Cir. 1993); see also USX Corp., 988 F.2d at 439 (holding "[t]he law will imply a term only for omitted covenants") (internal quotation and citation omitted); Cincinnati SMSA Ltd Partnership v. Cincinnati Bell Cellular Sys. Co., 708 A.2d 989, 993 (Del.Supr. 1998) (holding implied covenant cannot be used "to vary the Agreement *ex post*").

Accordingly, HP is entitled to summary judgment on the Fifth Claim for Relief.

**6. Sixth Claim for Relief (Conspiracy)**

It is undisputed that under both Delaware and California law, conspiracy is "not an independent cause of action" and, consequently, must be "predicated upon an underlying wrong." (See Opp'n at 25-26 n.28 (citing Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211 (9th Cir. 1997); Ramunno v. Cawley, 705 A.2d 1029, 1039 (Del.Supr. 1998).) Here, to the extent MMCA argues its conspiracy claim is based on its surviving tort claim for misappropriation of trade secrets, such conspiracy claim nonetheless fails, for the reason that, as discussed above, a claim for misappropriation displaces other tort claims based on the same allegations. See Total Care Physicians, 798 A.2d at 1057 (holding civil conspiracy claim fails where based on same allegations as

misappropriation claim).[8]

Accordingly, HP is entitled to summary judgment on the Sixth Claim for Relief.

**B.  PICA's Motion**

**1.  First Claim for Relief (Interference with Prospective Economic Advantage)**

As discussed below, PICA has failed to show no triable issue of fact exists with respect to the issues of whether PICA interfered with MMCA's relationship with its employees and contractors or, by reason of such interference, with its relationship with HP.

First, although PICA has produced considerable evidence to support a finding that it neither knew nor had reason to know the identities of such employees and contractors constituted trade secrets or that such individuals otherwise were not subject to solicitation, MMCA has produced evidence sufficient to raise a triable issue with respect thereto.  (See, e.g., Frucht Supp. Decl. Ex. 21 at 2; Cresswell Decl. at 4:2-6, 4:25-27); see also Reeves v. Hanlon, 33 Cal.4th 1140, 1152-53 (2004) (holding intentional interference with prospective economic advantage requires "an independently wrongful act – i.e., an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard") (internal quotation and citation omitted).[9]

Similarly, although PICA has produced substantial evidence to support a finding that it was unaware of MMCA's relationship with HP until after HP had terminated MMCA's services in the LAR and PICA had been selected to perform such services, MMCA has produced evidence sufficient to raise a triable issue.  (See, e.g., Cresswell Decl. at 4:18-24); see also Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1164 (2003) (holding elements of claim for intentional interference with economic advantage include

---

[8] This ruling, however, is not intended to preclude MMCA, at trial, from seeking to prove its misappropriation claim with evidence indicating, on the part of HP and another entity, a common design to commit a wrong.  See, e.g., Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 784 (1979) ("As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damages on all of them, regardless of whether they actually commit the tort themselves.") (emphasis omitted).

[9] As discussed elsewhere herein, MMCA has produced sufficient evidence to support a finding that the identities of its employees and contractors constitute trade secrets.

9

1  defendant's knowledge of relationship).

2  Accordingly, PICA is not entitled to summary judgment on the First Claim for Relief.

3  **2. Second Claim for Relief (Interference with Contractual Relations)**

4  Although PICA has offered substantial evidence to counter MMCA's claim of
5  interference with contractual relations, as it did with respect to MMCA's claim of interference
6  with prospective economic advantage, MMCA, as discussed above, has produced evidence
7  sufficient to raise a triable issue both as to PICA's knowledge of MMCA's economic
8  relationship with HP and the protected nature of the identities of MMCA's employees and
9  contractors. See Reeves, 33 Cal.4th at 1152 (holding "to recover for a defendant's
10 interference with an at-will employment relation, a plaintiff must plead and prove that the
11 defendant engaged in an independently wrongful act"). Additionally, MMCA has produced
12 evidence that the HP Services Agreement was not terminated at the time PICA took over
13 the LAR (See, e.g., Cherry Decl. ¶ 73.)[10]

14 Accordingly, PICA is not entitled to summary judgment on the Third Claim for Relief.

15 **3. Fourth Claim for Relief (Misappropriation of Trade Secrets)**[11]

16 Although PICA, again, has submitted considerable evidence, PICA has failed to show
17 no triable issue exists with respect to the question of whether PICA misappropriated
18 MMCA's trade secrets.

19 First, for the reasons set forth above with respect to HP's motion, PICA has failed to
20 show no triable issue exists as to whether MMCA's claimed trade secrets, whether
21 comprised of the identities of individuals or methods of operation, are subject to protection;
22 additionally, for the reasons set forth above, MMCA has raised a triable issue as to each
23 defendant's knowledge thereof.

24 Although, as PICA points out, employees generally are free to change employers
25 when they choose to do so, to the extent PICA argues a trade secret claim cannot, as a

---

[10] As discussed infra, MMCA also has produced evidence that PICA acquired and used MMCA's pricing information in submitting PICA's bid to HP.

[11] MMCA's Third and Fifth Claims for Relief are asserted only against HP.

matter of law, be based upon an employee's identity, the cases on which PICA relies for such proposition are distinguishable on their facts and, further, do not purport to categorically bar such claims. See Van Bourg, Allen, Weinberg & Roger v. NLRB, 728 F.2d 1270, 1273 (9th Cir. 1984) (holding, for purposes of exemption under Freedom of Information Act, "absent the Board's express promise of confidentiality, a list of names and addresses of employees that employers are required to give the Board, cannot fairly be characterized as [ ] 'trade secrets'") (citing Getman v. NLRB, 450 F.2d 670, 673 (D.C. Cir. 1971) (same)); CNA Fin. Corp. v. Local 743 of Int'l B'hd of Teamsters, 515 F.Supp. 942, 946 (N.D. Ill. 1981) (noting "it is conceivable that an employee list may contain such extensive and detailed information that would so devastate a company if disclosed to the wrong person that it could be characterized as a trade secret"); The Finish Line, Inc. v. Foot Locker, Inc., 2006 WL 146633 at *10 (S.D. Ind. 2006) (holding list of retail shoe chain's management personnel not protected as trade secret; noting "'it is conceivable that an employee list. . .could be characterized as a trade secret'") (citing CNA Fin. Corp.); Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th 853, 862 (1994), (holding "[s]imply hiring personnel who possess the requirements specified by a customer does not convert the employee into a 'trade secret'"; finding no violation of trade secret law where competitor hired radio station's traffic reporters and anchors).

Next, with respect to the issue of misappropriation, although California has rejected the doctrine of inevitable disclosure, see Whyte v. Schlage Lock Co., 101 Cal.App. 4th 1443 (2002), and although PICA has produced substantial evidence bearing on whether PICA improperly acquired and/or used any of MMCA's trade secrets, PICA has failed to show no triable issue exists with respect to such issues. In particular, MMCA has produced evidence sufficient to show PICA knowingly and improperly acquired the identities of certain of MMCA's employees and contractors and thereafter used that information to retain the services of those individuals. (See, e.g., Frucht Supp. Decl. filed Oct. 30, 2009, Ex. 21 at 2,

Ex. 53; Cresswell Decl. at 4:5-6, 4:25-27); see also Melick Decl. Ex. N at 146-50.)[12]  Further, MMCA has produced evidence sufficient to raise a triable issue as to whether PICA, in submitting its bid to HP, improperly acquired and used MMCA's pricing information.  (See, e.g., Cherry Decl. at 36:6-11; Geonetta Decl. Ex. 11; Cresswell Decl. at 4:18-19, 4:22-24; Byrne Decl. at 14:12-14; Frucht Supp. Decl. filed Nov. 6, 2009, Ex. 1 at 21; see also Melick Decl. Ex. N at 149-50).

Accordingly, PICA is not entitled to summary judgment on the Fourth Claim for Relief.

### 4. Sixth Claim for Relief (Conspiracy)

PICA's argument in favor of summary judgment on MMCA's conspiracy claim is predicated on a finding that PICA is entitled to summary judgment on each of the three above-discussed causes of action.  See Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994) ( "A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage") (internal quotation and citation omitted).  As set forth above, however, the Court has found a triable issue of fact exists as to MMCA's substantive claims.

Accordingly, PICA is not entitled to summary judgment on the Sixth Claim for Relief.

## CONCLUSION

For the reasons stated above:

1. HP's motion is hereby GRANTED in part and DENIED in part as follows:

    a. With respect to the First Claim for Relief, the motion is GRANTED.

    b. With respect to the Second Claim for Relief, the motion is GRANTED.

    c. With respect to the Third Claim for Relief, the motion is GRANTED to the extent MMCA claims HP breached the HP Services Agreement by (i) termination of

---

[12] Further, to the extent MMCA has produced evidence showing other individuals were solicited improperly by PICA but declined the offer (see, e.g., Frucht Suppl Decl. Ex 33; Geonetta Supp. Decl. Exs. 1-3), MMCA's lack of evidence as to damages is not necessarily fatal to MMCA's claim, as MMCA seeks injunctive relief as well.  (See SAC at 33:7-9.)

1  MMCA's projects in the LAR and EMEA; and (ii) direct solicitation; in all other respects, the
2  motion as to such claim is DENIED.
3        d.  With respect to the Fourth Claim for Relief, the motion is GRANTED to the
4  extent such claim is based on information constituting HP's "Work Product" under the HP
5  Services Agreement; in all other respects the motion as to such claim is DENIED.
6        e.  With respect to the Fifth Claim for Relief, the motion is GRANTED.
7        f.  With respect to the Sixth Claim for Relief, the motion is GRANTED.
8    2.  PICA's motion for summary judgment is hereby DENIED.
9    **IT IS SO ORDERED.**

Dated: January 12, 2010

_____
MAXINE M. CHESNEY
United States District Judge